C. P. HOPKINS v. J. L. HALLIBURTON AND R. S. PARR.

No. 206.

1. **Attachment—Variance—Attorney Fees.**—When a note is executed for a certain amount, with interest thereon, and 10 per cent additional as attorney fees, if collected by law, attorney fee is recoverable on principal and interest due; and there is no variance between writ of attachment and petition when writ sets out gross amount due, including attorney fees on principal and interest. Morrill v. Hoyt, 83 Texas, 59.

2. **Promissory Note—Several Payees.**—When a note is payable to two persons "or either of them," upon a valuable consideration from one of the payees, it makes the payor liable to him for its payment according to its tenor and effect.

3. Defense to Note — Action Over. — When a party is sued on a note and sets up a complete defense against the note, and the plaintiff recovers, defendant can not recover over against another party on a cause of action inconsistent with the defense set up against the plaintiff.

APPEAL from Gonzales. Tried below before Hon. GEO. McCORMICK.

*Harwood & Harwood*, for appellant.

*Atkinson & Abernethy* and *Glass & Burgess*, for appellee Parr.

*Fly & McNeal*, for appellee Halliburton.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee Halliburton against the appellee R. S. Parr, on a promissory note, which is substantially as follows:

"$1682.70.                    WAELDER, TEXAS, February 11, 1889.

"Two hundred and twenty days after date I promise to pay to the order of T. H. Trippe and J. L. Halliburton, or either of them, $1682.70, at Waelder, Texas, with 10 per cent interest per annum from December 20, 1888, until paid, with 10 per cent additional if collected by law, as attorney fees. Value received.

[Signed]                                        "R. S. PARR."

There is a transfer endorsed on the note from Trippe to Halliburton, without recourse. The petition on the note is in the usual form, the plaintiff praying judgment on the note, with interest and attorney fees, less a credit of $100 entered on the back of the note January 11, 1890.

The defendant, R. S. Parr, filed his original answer, wherein he excepted to plaintiff's petition, plead a general denial and certain special pleas, which are substantially as follows, to-wit: First. That the transfer of the note from Trippe to Halliburton was without consideration, and made after maturity of the note. Second. That the transfer by Trippe to Halliburton was made for the purpose of defrauding Trippe's creditors, which fact was known to plaintiff, who entered into the conspiracy to aid in. the fraud. Third. That on the 19th day of November, 1888, T. H. Trippe and J. L. Halliburton were merchant partners, under the firm name of Halliburton & Trippe; that at the time Trippe and plaintiff were indebted to the estate of the minor children of George Holcombe, deceased, in the sum of about $4500, for which sum the wife of George Holcombe, deceased, the mother and guardian of his children, held the joint promissory note of said Trippe and Halliburton; that at said time C. P. Hopkins owned individually a certain tract of land, consisting of about 810 acres, situated in Gonzales County, which defendant

Parr desired to purchase; that said Trippe, Halliburton, and Hopkins desired to effect an arrangement with Parr by which he was to receive the land above mentioned in consideration of the notes above mentioned, and Parr's individual note for the difference in the price of said land and the amount due on said notes, to-wit, the sum of $4000; that such trade for the land was on the last mentioned date made and entered into, C. P. Hopkins executing and delivering to defendant Parr his warranty deed to the land above mentioned, in consideration of the aforesaid notes and Parr's individual notes for the balance; that soon afterwards defendant Parr ascertained that said transaction was illegal and void, he having no right to transfer the funds of said estate; that the illegality of the transaction was then fully made known to and understood by said Hopkins, Trippe, and Halliburton; that as soon as he ascertained the illegality of the transaction, he sought to rescind it, and offered to reconvey to said Hopkins said land in exchange for said notes and the surrender of his individual note to Hopkins, to which Hopkins agreed, provided defendant would execute his individual note for the sum of $1682.70, said amount, as there and then stated by Hopkins, being the sum realized by him from the rents of the farm for the year previous, with the understanding and agreement on the part of Hopkins and defendant that said note was paid as the rent of said place during the year A. D. 1889; provided, that should Mrs. M. E. Parr, guardian of the Holcombe minors, obtain from the County Court of Gonzales County, where the guardianship of said minors was then pending, an order authorizing her to invest the funds of the minors in the above described land, and thus acting with the defendant Parr, who agreed to give his individual note for the difference between the amount of said funds and the price of said land, legally effect the same trade for the land, and in that event the consideration for which said note was given would have failed and the note sued on became void, and was to be surrendered to defendant Parr.   That at the instance and request of C. P. Hopkins, defendant Parr, on the 11th day of February, 1889, executed and delivered the note to T. H. Trippe and J. L. Halliburton, and deeded back to Hopkins the land, and received from Hopkins the notes of Trippe and Halliburton originally transferred to him as part of the consideration for the purchase of said land.   That thereafter, in 1889, acting in pursuance of said agreement, Mrs. M. E. Parr applied for and obtained an order of the County Court of Gonzales County, authorizing her to invest the funds belonging to said minors in the land above described; that as soon thereafter as practicable, to-wit, on the 30th day of December, 1889, the defendant Parr and Mrs. M. E. Parr, acting together, effected the original trade with the said Hopkins for said land, by reason whereof the consideration for which said note sued on failed.

The defendant, Parr, further alleged, that at the time of the execution

of said note Hopkins and Trippe, of whom the latter was acting for himself and Halliburton, were both personally present and knew all the facts alleged by defendant, Parr, in reference to the illegal transaction between him and Hopkins in regard to the purchase of the land by said defendant from Hopkins with the funds belonging to the Holcombe minors, and knew that the notes held by Mrs. Parr, made by Trippe and Halliburton, were given for money which belonged to said minors; that Trippe and Hopkins knew that the note sued on was given under circumstances and upon the terms and conditions alleged; that Hopkins and Trippe then acted fraudulently and connived together for the purpose of extorting money from Parr, led him to believe that he had, by entering into said illegal transaction with Hopkins, violated the penal laws of this State, and had become liable to criminal prosecution for a grave offense, and thereby induced him to sign the note sued on as a means of getting back said notes executed by Trippe and Halliburton so illegally transferred to Hopkins; that the sum of $1682.70 was largely in excess of the rental value of said premises for one year, which each and all the parties then knew.

The defendant, Parr, in his answer then prays that C. P. Hopkins be made a party defendant, and in the event judgment should be rendered against him in favor of Halliburton, that he have judgment over against Hopkins for a like sum and costs of suit.

The plaintiff, Halliburton, by a supplemental petition, excepted to the sufficiency of Parr's answer, and pleaded specially that the note sued on was executed and delivered by defendant Parr for a valuable consideration, in that on February 2, 1888, plaintiff and T. H. Trippe were indebted to Mrs. M. E. Holcombe, now wife of defendant, and executed and delivered to her their note for $1565.33, due five years after date, with 10 per cent interest thereon, and that plaintiff and said Trippe were also indebted to M. E. Holcombe in the sum of $2673, evidenced by their promissory note for that amount; that said indebtedness was held by M. E. Holcombe as guardian of the estates of her children; that thereafter defendant and his wife, formerly M. E. Holcombe, entered into a contract with C. P. Hopkins for the purchase of 810 acres of land in Gonzales County, agreeing to pay said Hopkins the sum of $——— for said land, and that as a part of the purchase money for said land defendant and his wife transferred and delivered to C. P. Hopkins both of said notes executed by plaintiff and Trippe, and that after the sale, and while Hopkins held said notes, plaintiff and Trippe paid off and discharged the one for $1565.33; that after said land trade and the payment of said note to Hopkins, on account of some illegality in the sale, the sale was rescinded, and by order of the County Court of Gonzales County the wife of defendant was permitted to buy from C. P. Hopkins about 600 acres of said land for her wards, and that defendant R. S. Parr and wife bought from Hopkins 210 acres of said land; and that the money due said M. E. Hol-

combe by plaintiff and Trippe was the property of the minor children of M. E. Holcombe, and held by her as guardian, and in settling her account with the County Court of Gonzales County she was required to account for said notes, and to use the same in the payment of the said 600 acres of land; that defendant and his wife demanded of Hopkins the return of said notes when the original trade was rescinded, but that Hopkins having surrendered one of the notes to plaintiff and Trippe on the payment thereof, could not deliver it to said guardian; that plaintiff had paid a part of said amount due on the notes to the guardian, and they being called upon by said guardian for payment of said notes, she being desirous of securing their possession to be used in settlement with said minors and in the purchase of said 600 acres of land from Hopkins, it was agreed that plaintiff and Trippe should execute their joint promissory note to C. P. Hopkins for the balance due on said indebtedness by them to her as guardian of said minors, which said guardian had agreed should be made to C. P. Hopkins in part payment for said 600 acres of land as a cash payment thereon, and that said note was executed by them for $4055.50 to said C. P. Hopkins, and accepted by him; that by agreement between defendant and his wife, for moneys expended by said defendant belonging to the estate of the minors, and to reimburse plaintiff and Trippe for the money paid Hopkins in satisfaction of the note for $1565.33, defendant executed to plaintiff and Trippe the note sued on; that after the execution of said note defendant for a long time recognized the validity thereof, and paid thereon the sum of $100; and that the interest of Trippe in the note was for value transferred to plaintiff.

The defendant C. P. Hopkins answered by a general denial, and specially, substantially as follows: That it is true that on or about the 19th day of November, 1888, he sold and conveyed to Parr a tract of 800 acres of land known as the Bass farm, but denied that there was any arrangement whatever between him and Trippe and Halliburton to that end, but that the trade was made solely between him and Parr, and on his part was bona fide; that the consideration paid for the farm was $8000, of which a part was paid in two notes executed jointly by T. H. Trippe and J. L. Halliburton to the wife of Parr, one for the sum of $1565.33, and the other for $2673, with certain credits, amounting at date of transfer, less credits, to $2426.39, transferred by regular endorsement by said Parr and wife to him; that Parr executed his individual note to him for the balance of the purchase money; that there was no illegality in the transaction on his part; that he executed a warranty deed, and carried out the sale in every respect as he had agreed; that it was regular and in good faith, and that he did not know that Parr was acting illegally and wrongfully in the transaction; that it is true Parr afterwards came to him and represented that he had wrongfully and illegally used the notes belonging to his wife's children by a former mar-

riage, and asked that the sale be rescinded, offering to reconvey the land, and asking him to deliver the notes; that he could not comply with the request as made, because he had already used the smaller note of $1565.33 executed by Halliburton and Trippe and transferred by Parr and his wife to him, and had parted with the title to it; but that he finally agreed and did agree to rescind the sale upon the following terms, to-wit, that he would retransfer, without recourse, the larger note for $2673 and receive back a deed to the land, and that he was to retain the proceeds of the $1565.33 for the use of said farm as rent for the current year, and for the further consideration of the use of eight yoke of oxen and 200 bushels of corn, all of which, the use of the farm, steers, and corn, were turned over by him to Parr; that it was further understood at the time that he would again convey the land to Parr and the children of Parr's wife, of whom she was guardian, in case an order was obtained from the Probate Court of Gonzales County by said Parr and wife, authorizing him to invest the money in said land; and the said Parr and wife were to be responsible to and settle with the guardianship of said children. That afterwards there was an order to invest the children's money in 600 acres of said land, and he conveyed to said children said 600 acres, and to the said Parr 210 acres of said land; that when the conveyance was made he, of his own accord, accepted the original price for said land, to-wit, $8000, with one year's interest, giving Parr credit for the note collected on the original purchase price, the said transaction being treated as an entirety; but the said Holcombe children were credited with all funds and moneys to which they were entitled, and received 600 acres of the land for same, and Parr executed his individual note for his share of the purchase money; that he in every respect carried out the agreement as made, except that he did not exact the whole of the money agreed and actually paid him for the use of the farm, steers, and corn; that he released a part of the rent money on final settlement, and gave Parr credit for the same in settlement between him and his wife with the Holcombe children.

That the original notes of Halliburton and Trippe were plain notes of hand, payable to Mrs. Holcombe, afterwards wife of Parr, and were properly endorsed to him, and he had no knowledge of the interest of said minors in them, but believed Parr and wife were acting on legal and proper authority in transferring them; that the land conveyed was amply worth the money paid for it; that the deed to the Holcombe children investing their money in said land was approved by the Probate Court; that he did not collude with Trippe and Halliburton or any one else in said transaction; that Parr and wife and the Holcombe children have a warranty deed from him to 810 acres of land, and that said children were credited for all the money to which they were entitled, and the same was the consideration for the sale of the land conveyed to them; and that

Parr was allowed on final settlement credit for the rent money collected by him on the original contract price, and charged only interest on the original $8000 instead of the rent agreed on; that this arrangement was entirely satisfactory to all the parties at the time, and was fully understood and agreed on, and was the condition upon which he agreed to rescind the original conveyance.

The case was tried before a jury, and resulted in a verdict in favor of the plaintiff, J. L. Halliburton, against the defendant R. S. Parr, for the sum of $2234.19, and in favor of the defendant R. S. Parr against the defendant C. P. Hopkins for the same sum. Upon this verdict judgments were rendered, and this appeal is prosecuted by Mr. Hopkins from the judgment in R. S. Parr's favor against him.

The defendant Parr also filed cross-assignments of error.

The only assignment of error insisted upon by Mr. Parr is the one that calls in question the validity of the attachment issued in the case; otherwise the judgment in Halliburton's favor against him is not controverted. We have concluded to affirm that judgment; and as our action on the judgment in favor of Parr against C. P. Hopkins will, in a large measure, be controlled by the facts upon which the judgment against R. S. Parr must be supported, we conclude such facts to be as follows, to-wit:

1. On February 2, 1888, Mrs. Holcombe, afterwards the wife of R. S. Parr, was guardian of her minor children, and as such held two promissory notes, the property of her wards, executed to her by J. L. Halliburton and T. H. Trippe, one of which was for $1565.33 and the other for $2673, both of which bore 10 per cent interest, and were due five years from the date last mentioned. Halliburton and Trippe were also on her guardian's bond.

2. In November, 1888 (Mrs. Holcombe in the meantime having married R. S. Parr), C. P. Hopkins sold and conveyed R. S. Parr a tract of 810 acres of land, situated in Gonzales County, Texas, and known as the Bass farm, in consideration of $8000, of which a part was paid by the transfer and delivery by Parr and wife to Hopkins of the two promissory notes made by Halliburton and Trippe to Mrs. Holcombe, which are described in our first conclusion of fact. For the balance of the purchase money R. S. Parr executed his individual note to his vendor.

3. That the note of $1565.33 was paid with the money of Halliburton and taken up by the payees after it was assigned to Hopkins.

4. After said sale was consummated, R. S. Parr was advised by his counsel and the county judge of Gonzales County that the disposition of the notes for money due his wife's wards in payment for said land was illegal, and an offense against the penal laws of the State; whereupon he sought to rescind the sale by reconveying the land to his vendor and obtain the possession of said notes, which he could not effect without pro-

curing the $1565.33 note from Halliburton and Trippe, which had then been paid off, as before stated, and in order to procure said note, and in consideration thereof, he executed the note sued on to Halliburton and Trippe, who in consideration thereof delivered him said note for $1565.33. He also obtained the other note from Hopkins and reconveyed him the land.

5. After this an order of the County Court was obtained authorizing the guardian of the Holcombe minors to invest their money in 600 acres of the land theretofore purchased by Parr from Hopkins, and Parr agreed to buy the balance, amounting to 210 acres, and Halliburton and Trippe executed in lieu of the two original notes a new one for $4055, which was, together with $500 in money and $600 in a check, paid Hopkins on the 600 acres of land purchased from him under order of the Probate Court for the Holcombe minors.

Other conclusions of fact would be upon issues solely between Parr and Hopkins, and as the judgment against the latter will be reversed, we refrain from making any findings upon them.

*Conclusions of Law.*—1. The note sued on having been executed by Parr and made payable to the order of T. H. Trippe and J. L. Halliburton, *or either of them*, upon a valuable consideration enuring to the maker from Halliburton, made the payor liable to Halliburton for its payment according to its tenor and effect.

2. There is no variance between the amount sued for as set out in plaintiff's petition and the amount alleged in the affidavit for the attachment. The plaintiff was entitled to recover as interest 10 per cent of the amount of the note from December 20, 1888, and an additional 10 per cent on the principal and interest due at the time of trial as attorney fees. Morrill v. Hoyt, 83 Texas, 59; Behrens v. Dignowitty, 23 S. W. Rep., 288. Such was the amount sued for and claimed in the affidavit for the attachment. That the jury did not find the full amount due as attorney fees is no ground upon which the appellee Parr should complain.

3. The facts necessary to sustain the judgment in favor of Halliburton against R. S. Parr, which are incorporated in our conclusions of fact, are absolutely inconsistent with any facts which could be shown under the pleadings in this case that would support the judgment in favor of Parr against C. P. Hopkins. If the note was obtained without consideration, by a fraudulent conspiracy by Hopkins, Trippe, and Halliburton against the maker, the plaintiff, being a party to such fraud and one of the payees, could not recover; and if the note was given for the rents, etc., for the benefit of Hopkins upon the rescission of the first sale, Halliburton was not entitled to a judgment on it against Parr      That it was not obtained by the alleged fraudulent conspiracy, nor given Hopkins for the rent of the farm, is shown by the verdict in Halliburton's favor.

Under the pleadings and evidence a judgment could not be rendered in favor of Halliburton against Parr, and in Parr's favor against Hopkins. The judgment of the District Court in favor of Halliburton is affirmed, and the one in favor of R. S. Parr against the appellant, Hopkins, is reversed, and the cause, as between the two last named parties, is remanded to the District Court, with instructions to direct the jury, if the pleadings and evidence should be the same on another trial, to return a verdict in favor of C. P. Hopkins.

*Reversed and remanded.*

Delivered February 21, 1894.

Justice FLY did not sit in this case.

ON MOTION FOR REHEARING.

NEILL, ASSOCIATE JUSTICE.—We here correct and amend our conclusions of fact by inserting copies of the notes therein referred to as held by the wife of R. S. Parr in her capacity of guardian of the Holcombe minors. They are as follows:

"No. 1.  .  WAELDER, October 18, 1886.

"Three years after date, we, or either of, us promise to pay Mrs. Mary E. Holcombe, guardian for Stella, Herman, E. D., and Jennie Holcombe, the sum of $2673, at Waelder, with interest at the rate of 8 per cent per annum, interest payable annually.

[Signed]  "J. L. HALLIBURTON,
  "T. H. TRIPPE."

"No. 2.  $1565.33.  WAELDER, February 20, 1888.

"Five years after date we promise to pay to the order of Mrs. M. E. Holcombe, administrator of estate of George Holcombe, $1565.33, at Waelder, Texas, value received, with interest at 10 per cent per annum.

[Signed]  "J. L. HALLIBURTON,
  "T. H. TRIPPE."

We have examined and considered with great care the appellee Parr's motion for a rehearing, as well as the ingenuous and able arguments of his counsel thereon; and after giving the motion and arguments full and careful consideration, have been unable to reach a different conclusion as to a proper disposition of this appeal than that attained and announced in our original opinion.

One must allege a cause of action in his pleadings, and to maintain it, prove the facts constituting it substantially as alleged. If he fails in either, he must fail in his suit. It is unnecessary to restate the pleadings of the parties. By his pleadings, Parr's cause of action against the ap-

pellant is made to depend upon Halliburton's having a cause of action against Parr. If the matters alleged by Parr are true, they show a complete defense to Halliburton's suit against him, and in doing so, demonstrate that he (Parr) has no cause of action against Hopkins.

Parr can not now be heard to say, for the purpose of sustaining his judgment against Hopkins, "The matters alleged by me as a defense to Halliburton's action are untrue, as is demonstrated by the verdict of the jury in his (Halliburton's) favor." For, to use the classical language of his counsel, he is "nailed to the counter" by his pleadings. Nor can he sustain this judgment by evidence wholly unwarranted by his pleadings. Nowhere did he allege that Halliburton was an innocent holder for value, without notice, of the note sued on. On the contrary, he averred, that at the time of the execution of the note Hopkins and the said Trippe, who was then and there acting for himself and for the plaintiff, were both present, and knew that the note sued on was given under the circumstances and upon the terms and conditions set out in his answer. He alleges that the understanding and condition upon which the note was given was, that upon the occurrence of a certain alleged event, "the consideration for which said note was given should have failed, and said note would then become void and of no further force or effect as against him, and was to be surrendered to him." He alleged also the occurrence of the event.

We fail to see under these allegations how Halliburton could be an innocent purchaser for value of the note, without notice of the consideration for which it was given. If they are true, Halliburton was fully cognizant of the whole transaction, and a party to the understanding and agreement; and he, being one of the payees of the note, was bound to "surrender" it to Parr when the event occurred which according to the understanding made the note void. The allegation is not that Hopkins should surrender the note to Parr; but upon its becoming void it "was to be surrendered to him." Presumably the payees would be the holders of the note, and the obligation to surrender it would therefore be upon them, Trippe and Halliburton.

After giving Parr the full benefit of every inference that can be indulged from his pleadings, we can not find in them the slightest foundation upon which to rest the judgment in his favor against the appellant. If it was legitimate to take up and consider the pleadings of Halliburton for the purpose of ascertaining whether they alleged a cause of action for Parr as against Hopkins, and if so, to give Parr the full benefit of such allegations taken from plaintiff's pleadings alone, or in connection with the allegations in his answer, nothing could be found in them to support his judgment against Hopkins. For the pleadings of the plaintiff are wholly antagonistic to those of Parr. Let the judgment against appellant be viewed from any legal standpoint it may, it will be seen

that there is a total lack of pleadings in the record to support it. It matters not upon what evidence the jury may have based its verdict in favor of Parr, nor whether such evidence would warrant it under proper pleadings, the verdict in Parr's favor can not be upheld under the pleadings as they are.

Our findings of fact, as stated in our opinion, are those upon which the judgment in favor of the plaintiff against R. S. Parr is supported. Logically, they are inconsistent with the matters pleaded by the latter against Hopkins; and as the judgment in plaintiff's favor is not complained of by Parr, we think it should be affirmed upon the facts found. And as under no state of facts that could be shown under the pleadings can the judgment against Hopkins be affirmed, we think it is proper to reverse that judgment and remand the cause, with instructions as given in our opinion.

We do not hold that Parr, under proper pleadings, would not have a cause of action, upon the facts proved in this case, against Hopkins. It is not our province to give any opinion as to that matter. We only hold that under his pleadings as they are before us, whatever the evidence may be, the judgment against Hopkins can not be sustained.

Appellee Parr's motion for rehearing is overruled.

*Motion overruled.*

Justice FLY did not sit in this motion.

Writ of error refused April 30, 1894.